IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | | |
|---|---|---|
| CRYSTAL VL RIVERS, | ) | |
|     Plaintiff, | ) | Civil Action No. 6:22-cv-00034 |
| | ) | |
| v. | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| JOHN WYNNE, et al., | ) | By:    Joel C. Hoppe |
|     Defendants. | ) |         United States Magistrate Judge |

This matter is before the Court on a Motion for Rule 11 Sanctions filed by Defendants John Wynne ("John"), James Wynne ("James"), and 1650 Partners, LLC (together, the "Wynne Defendants"). Wynne Defs.' R. 11 Mot., ECF No. 90 (citing Fed. R. Civ. P. 11(b)). The Wynne Defendants seek two types of Rule 11 sanctions against the pro se plaintiff, Crystal VL Rivers, for naming them as parties to what they believe is yet another "frivolous" lawsuit "filed merely for the improper purpose of continuing to harass" them. *Id.* at 1; *see* Fed. R. Civ. P. 11(c)(2). First, they ask for $8,500 in attorney's fees, Wynne Defs.' R. 11 Mot. 9, "relating to her filing of this action," *id.* at 7. *See* Fed. R. Civ. P. 11(c)(4). Second, they ask the Court to enter a sweeping "gatekeeper order" requiring Rivers to obtain "prefiling review" of "*any* future filings in *any* court of the United States," Wynne Defs.' R. 11 Mot. 8 (emphasis added), even if those filings have nothing to do with the Wynne Defendants. *See id.* at 7–8 (discussing *Farley v. Bank of Am., N.A.*, No. 3:14cv568, 2015 WL 3651165, at *8–9 (E.D. Va. June 11, 2015), *aff'd*, 615 F. App'x 804 (4th Cir. 2015) (Mem.)). Rivers opposes the motion. ECF No. 122.

I. Background

This case is the latest in a long line of lawsuits "aris[ing] out of business dealings and financial transactions between" Rivers, her companies, and "various business entities and individuals." *CVLR Performance Horses, Inc. v. Wynne*, 852 F. Supp. 2d 705, 708 (W.D. Va.

1

2012) (*CVLR I*). Rivers filed this action on June 9, 2022, Compl., ECF No. 1, and amended her complaint later that month, Am. Compl., ECF No. 3. Her Amended Complaint is 115 pages long, excluding the exhibits; names thirty-five private individuals, banks, and law firms as defendants; and contains thirteen counts[1] asserting claims under the federal RICO Act, 18 U.S.C.§§ 1962–1964, as well as for breach of contract, civil conspiracy, fraudulent conveyance, common-law fraud, and tortious business interference under Virginia law. Am. Compl. ¶¶ 6–41, 57–578.

As in prior lawsuits, most claims stem from "Rivers's and CVLR's tumultuous business relationship with" John Wynne, 1650 Partners, and Rivermont Banking Company, R. & R. of Feb. 26, 2020, at 3, *Rivers v. United States (Bowman)*, No. 6:18cv61 (W.D. Va.) (Hoppe, M.J.), ECF No. 346, *adopted in relevant part*, Mem. Op. of Mar. 24, 2020, at 1 (Dillon, J.), ECF No. 372. *Compare* Am. Compl. ¶¶ 43–45, 57, 60–61, 63–64, 67, 79–81, 130, 167–70, 202, 258, 341, 433, 467, 504, *and* 559 (allegations referencing a riding center, Karen Foster's home, insurance proceeds, and Rivers's partnership interest in 1650 Partners), *with* R. & R. of Feb. 26, 2020, at 3–4, 9–21 (summarizing Rivers's prior allegations in similar, but more specific terms), *CVLR Performance Horses, Inc. v. Wynne*, 524 F. App'x 924, 925–39 (4th Cir. 2013) (*CVLR II*) (summarizing CVLR's prior allegations in similar, but more specific terms), *and CVLR I*, 852 F. Supp. 2d at 709–15 (same). Indeed, the Court had seen Rivers's Amended Complaint before she brought this case—it is a slightly different version of her proposed third amended complaint in *Rivers v. United States (Bowman)*, No. 6:18cv61 (W.D. Va. Oct. 19, 2020), ECF No. 485-1.

Defendants John Wynne, James Wynne, and 1650 Partners were not defendants in *Bowman*. Many years earlier, however, CVLR sued John and 1650 Partners for civil RICO violations, tortious interference with a business expectancy, and statutory business conspiracy.

---

[1] Rivers labeled these Counts 1–8 and Counts 10–14. There is no Count 9. I use her original numbering.

2

*See generally* Am. Compl. 1–20, 22–44, 46–56, *CVLR Performance Horses, Inc. v. Wynne*, No. 6:11cv35 (W.D. Va.), ECF No. 57 (Dec. 21, 2011). Rivers was not a party to that action, but CVLR's pleadings consistently alleged that Rivers was the only person acting on CVLR's behalf when dealing with John Wynne and 1650 Partners. *See, e.g.*, Compl. 3–4, 6, 8, 10, *CVLR*, No. 6:11cv35 (W.D. Va.), ECF No. 1 (Sept. 8, 2011); Am. Compl. 2–8, 10–17, 27–28, 34, 36–38, *CVLR*, No. 6:11cv35 (W.D. Va.), ECF No. 57. Rivers also signed the verified pleadings "on behalf of CVLR Performance Horses, Inc." in her capacity as "Its President, Crystal Rivers." ECF No. 1, at 23; ECF No. 57, at 58. CVLR settled its claims in mediation, ECF No. 179, and this Court dismissed the action with prejudice in March 2014, ECF No. 181. Rivers "signed the settlement agreement agreeing not to sue Wynne or the other Defendants." R. & R. of Feb. 26, 2020, at 3 (quoting Second Am. Compl. ¶ 89, *Bowman*, ECF No. 17); *accord* Am. Compl. ¶ 258 n.31 ("Rivers signed a settlement agreement in 2014 agreeing never to sue Wynne/1650/Rivermont.").

\*

Rivers's Amended Complaint in this case named John Wynne and James Wynne as defendants to six counts: Count 2 (RICO conspiracy); Count 3 (civil RICO); Count 5 (fraudulent conveyance); Count 12 (RICO conspiracy); Count 13 (civil conspiracy); and Count 14 ("Tort[i]ous Business Interference VA Code §§ 18.2-499, 500"). It named 1650 Partners as a defendant to: Count 3; Count 4 (RICO conspiracy); Count 5; Count 7 ("Respondent Superior"); Count 10 (civil conspiracy); Count 12; and Count 13. Each Count relates to (at least) one of two series of events, occurrences, or transactions that were also at issue in *Bowman*: (1) Wynne using funds that he unlawfully obtained from Rivers and/or CVLR to conduct a "sham foreclosure" on Karen Foster's home, which Rivers did not own, and numerous financial transactions intended to

3

hide Wynne's (and his conspirators') alleged misconduct, *see, e.g.*, *id.* ¶¶ 161, 186–87, 223 (Count 2); and (2) the sales of a riding center and several "optioned lots" in two subdivisions, which Rivers believes are "under contract with [her] to purchase," *see, e.g.*, *id.* ¶¶ 566, 568, 570 (Count 14). *See generally* R. & R. of Feb. 26, 2020, at 16–17, 30–35 (summarizing alleged facts and claims related to Karen Foster's home); R. & R. of Nov. 10, 2020, at 12–19, 49–55 (summarizing alleged facts and claims related to the riding center and optioned lots). CVLR's claims against John and 1650 in the 2011 case also focused on their alleged involvement in both events, especially as they related to the riding center and CVLR's stolen assets. *See, e.g.*, Second Am. Compl. 2–10, 17–19, 23–24, 26–30, 39–44, 46–48 (factual allegations and claims related to the riding center, the unlawfully obtained assets, and the foreclosure on Karen Foster's home), *CVLR*, No. 6:11cv35, ECF No. 57 (Dec. 21, 2011); *CVLR I*, 852 F. Supp. 2d at 709–11, 714–15 (summarizing the same).

The Wynne Defendants moved to dismiss this Amended Complaint, ECF No. 3, with prejudice on four grounds. *See* Defs.' Br. in Supp. 5–6 (res judicata), 7–8 (accord & satisfaction; time bar), 8–9 (insufficient facts). They primarily argued that this suit is barred by res judicata because "[Rivers], through her entity CVLR Performance Horses, Inc.," filed the same suit against John and 1650 Partners in 2011, and this Court dismissed that action with prejudice in March 2014. *See id.* at 1–2, 5–6. In August 2023, I issued a Report & Recommendation noting that "[a]ll four grounds for dismissal ha[d] some merit. Some grounds, like the expired limitations periods and insufficient factual allegations, [were] so clear from the face of the pleading that Rivers did not bother opposing them." R. & R. of Aug. 25, 2023, at 11, ECF No. 140. Their res judicata defense, on the other hand, would have required the Court to consider matters outside the pleadings, Fed. R. Civ. P. 12(d), before it could decide whether Rivers was in

4

privity with CVLR, Inc., and James was in privity with 1650 Partners (as the Wynne Defendants argued they were), for purposes of determining if the final dismissal order in *CVLR* barred Rivers's claims in this case. *Id.* (citing R. & R. of Nov. 10, 2020, at 39–40). Faced with those choices, "the fairest and speediest thing to do [was] dismiss Rivers's claims with prejudice because her own allegations ma[d]e clear that those clams [were] time barred." *Id.* (citing Fed. R. Civ. P. 1, 12(b)(6)); *see generally id.* at 12–17. The presiding District Judge adopted this recommendation in September 2023. ECF No. 148.

## II. The Legal Framework

"Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). Whenever an attorney or unrepresented party "present[s] to the court a pleading, written motion, or other paper[,] whether by signing, filing, submitting, or later advocating it," he or she "certifies . . . to the best of the person's knowledge, information, or belief, formed after an inquiry reasonable under the circumstances" that the paper meets four substantive requirements:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a belief or a lack of information.

Fed. R. Civ. P. 11(b)(1)–(4); *see Tyler v. Cashflow Techs., Inc.*, No. 6:16cv38, 2016 WL 6548006, at *2 (W.D. Va. Nov. 3, 2016). In the Fourth Circuit, courts apply an "objective reasonableness" test to determine whether a paper violated Rule 11(b) at the time the signer

presented it. *Guidry v. Clare*, 442 F. Supp. 2d 282, 288–89 (E.D. Va. 2006); *see In re Kunstler*, 914 F.2d 505, 514, 518–19 (4th Cir. 1990); *United States v. Henry*, No. 2:07cv342, 2017 WL 1065820, at *1 (E.D. Va. Mar. 20, 2017).

The Wynne Defendants' motion relies on Rule 11(b)(1). *See generally* Wynne Defs.' R. 11 Mot. 1, 6–8. This subsection "focuses upon the improper" reason for presenting a paper, "objectively tested, rather than the consequences of the signer's act, subjectively viewed by the signer's opponent." *In re Kunstler*, 914 F.2d at 518 (quoting *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 832 (9th Cir. 1986)). "In other words, it is not enough that the injured party subjectively believes" the signer was trying to harass him or run up his legal bills by presenting the paper. *Id.* The "court must ignore evidence of the injured party's subjective beliefs and look for more objective evidence of the signer's purpose," knowledge, or beliefs, *id.* at 519, measured "under an objective standard of reasonableness," *id.* at 518. *See Coates v. United Parcel Servs., Inc.* 933 F. Supp. 497, 500 (D. Md. 1996). Gamesmanship, "[r]epeated filings, the outrageous nature of claims made, or a signer's experience in a particular area of law, under which baseless claims have been made, are all appropriate indicators of an improper purpose" under Rule 11(b)(1). *In re Kunstler*, 914 F.2d at 519. "Filing a lawsuit to 'vindicate rights' through the judicial process, on the other hand, is almost always objectively reasonable." *Rivers v. United States (Bowman)*, No. 6:18cv61, 2020 WL 6880967, at *2 (W.D. Va. Nov. 23, 2020) (quoting *In re Kunstler*, 914 F.2d at 518). "If an attorney or pro se plaintiff filed a complaint to 'vindicate rights in court, and also for some other purpose,' that person should not be subject to Rule 11 sanctions 'so long as the added purpose is not undertaken in bad faith and is not so excessive as to eliminate' a 'central and sincere' desire to vindicate her rights." *Id.* (quoting *In re Kunstler*, 914 F.2d at 518).

6

A motion for sanctions "must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). The moving party bears the burden to show both that the violation occurred and that its requested sanction(s) is warranted under the circumstances. *See Henry*, 2017 WL 1065820, at *1. "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction" on the responsible party. Fed. R. Civ. P. 11(c)(1). Any sanction "must be limited to what suffices to deter" similar litigation misconduct by that party and "others similarly situated." *Id.*; *see In re Kunstler*, 914 F.2d at 514, 522 ("[T]he primary, or 'first' purpose of Rule 11 is to deter future litigation abuse."). The court enjoys broad discretion both in determining whether a filing violated Rule 11(b) and in crafting any appropriate sanction. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

### III. Discussion

The Wynne Defendants argue that Rivers violated Rule 11(b)(1) by naming them as defendants in her Amended Complaint, ECF No. 3. *See* Wynne Defs.' R. 11 Mot. 3–5. They seek $8,500 in attorney's fees, *id.* at 9, and an injunction barring Rivers from making "*any* future filings in *any* court in the United States" without first obtaining "prefiling authorization"—even if the filings have nothing to do with the Wynne Defendants or the subject matter of this lawsuit. *See id.* at 8 (emphasis added). A prefiling injunction is "a drastic remedy" that limits a litigant's constitutional right to access the courts. *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817–18 (4th Cir. 2004). Thus, it is reserved for "'exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions,'" and should be entered only after the court "weigh[s] all the relevant circumstances" in the particular case. *Id.* at 818 (quoting *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993)). Those circumstances

7

include whether the party is a non-lawyer appearing pro se; her "history of litigation, in particular whether [s]he has filed vexatious, harassing, or duplicative lawsuits"; whether she "had a good faith basis for pursuing the litigation, or simply intended to harass" the movant; and, perhaps most importantly, "the adequacy of alternative sanctions." *Id.* (vacating prefiling injunction entered against pro se plaintiff where magistrate judge did not properly consider these factors on the record). Finally, "even if a judge, after weighing the relevant factors, properly determines that a litigant's abusive conduct merits a prefiling injunction, the judge must ensure that the injunction is narrowly tailored to fit the specific circumstances at issue." *See id.* at 818–19 (magistrate judge's order requiring pro se plaintiff to obtain permission before "making any future filings" in the pending litigation or "in any *unrelated* case" brought in that judicial district was overly broad and unsupported by the record).

The Wynne Defendants assert that Rivers "is a serial litigator with a long history of filing baseless lawsuits." Wynne Defs.' R. 11 Mot. 1. Their motion discusses CVLR's federal lawsuit against John Wynne and 1650 Partners, which was dismissed with prejudice upon the parties' agreement, and two of Rivers's related lawsuits (*Sanzone* and *Bowman*) to which none of the Wynne Defendants were party. *See id.* at 3–5. Notably, in *Bowman*, the attorney who now represents the Wynne Defendants in this case filed a similar Rule 11 motion seeking a court order that would bar "Rivers and 'all those in privity with' her, from suing 'the [Defendant] Bank or any of its privities' in any court for any claims, regardless of whether they are related to [that] litigation, without first obtaining 'pre-filing authorization.'" *Rivers*, 2020 WL 6880967, at *3. Rivers had sued this Bank at least three times before she filed *Bowman* in 2018. *See id.* Based on the arguments and record before the Court in that case, however, I was constrained to

8

conclude that the Bank and its president had not shown Rivers violated Rule 11(b)(1) by naming them as defendants in *Bowman. See id.* at *3–4 (denying the motion without prejudice).

So too, here. "First, while Rivers's lawsuit has 'certainly had the *effect* of increasing [the Wynne] Defendants' litigation costs,' the question whether she violated Rule 11(b)(1) 'goes to the *purpose* of her purportedly baseless filing, rather than to its consequences.'" *Id.* at *3 (cleaned up) (quoting *Coates*, 933 F. Supp. at 500) (citing *In re Kunstler*, 914 F.2d at 518). Rivers did not sue any of the Wynne Defendants in *Sanzone* or *Bowman*, and this lawsuit appears to be the first time she has tried to assert CVLR's prior claims against the Wynne Defendants in her own name as a pro se plaintiff. *Cf. Farley*, 2015 WL 3651165, at *8–9 (finding pro se plaintiffs violated Rule 11(b)(1) by filing seventh lawsuit arising out of the same "inadequate facts" after being warned in prior federal action that "continuing to file frivolous lawsuits" would likely result in sanctions). Moreover, the Court declined to rule on the Wynne Defendants' res judicata defense in their Rule 12(b)(6) motion because not all of the facts necessary to that defense were apparent from the face of Rivers's pleading. *See* R. & R. of Aug. 25, 2023, at 2, 11; *cf. Sanders v. Tyco Elecs. Corp.*, 235 F.R.D. 315, 321, 323–24 (W.D.N.C. 2006) (finding represented plaintiff violated Rule 11(b)(1) by filing second Title VII action, which was barred by res judicata, considering "her bold threat" in open court that she would "press her case because she knows she is in the right" and her "vitriolic and outrageous accusations against the [d]efendant, defense counsel, her attorney and the Court itself without any evidence in support thereof").

"Second, [the Wynne] Defendants' brief does not address the *Cromer* factors or explain how a prefiling injunction is 'narrowly tailored to fit the specific circumstances at issue.'" *Rivers*, 2020 WL 6880967, at *4 (quoting *Cromer*, 390 F.3d at 818); *see also Abbott v. Suntrust*

9

*Mortg., Inc.*, No. 3:08cv665, 2009 WL 971267, at *5–6 (E.D. Va. Apr. 8, 2009) (enjoining pro se plaintiffs from "filing any action or further pleading in the Eastern District of Virginia involving the subject matter of this action" after judges in state and federal court "instructed [them] numerous times" that their claims against the bank were "frivolous" and "lack[ed] any merit"). To the extent the Wynne Defendants seek a prefiling injunction requiring a pro se plaintiff—and the courts—to take certain steps "for *any* future filings in *any* court in the United States," Wynne Defs.' R. 11 Mot. 9 (emphasis added), they have not identified a sufficient basis "in the record" that might justify such an "overboard restriction," *Cromer*, 390 F.3d at 819. *Cf. Thomas v. Fulton*, 260 F. App'x 594, 596 (4th Cir. 2008) (vacating order enjoining pro se plaintiff "from filing further civil actions against government officials and their counsel without permission of the district court in unrelated actions" because that "language 'ha[d] no boundaries'") (quoting *DeLong v. Hennessey*, 912 F.2d 1144, 1148 (9th Cir. 1990)).

### IV. Conclusion

For the foregoing reasons, the Wynne Defendants' Motion for Rule 11 Sanctions against pro se Plaintiff Crystal Rivers, ECF No. 90, is hereby **DENIED**.

The Clerk shall send certified copies of this Memorandum Opinion & Order to Rivers and all counsel of record.

ENTER: September 30, 2023

*/s/ Joel C. Hoppe*

Joel C. Hoppe
U.S. Magistrate Judge